# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### CASE NO. 1:22-CV-00247-FDW

| | | |
|---|---|---|
| **RICHARD PACKARD,** | ) | |
| | ) | |
| **Claimant,** | ) | |
| | ) | |
| **v.** | ) | **ORDER** |
| | ) | |
| **COMMISSIONER OF SOCIAL SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**THIS MATTER** is before the Court on Claimant Richard Packard's Motion for Summary Judgment and Memorandum in Support (Doc. No. 8), filed March 1, 2023; Defendant Acting Commissioner of Social Security's ("Commissioner") Brief (Doc. No. 11), filed May 1, 2023; and Claimant's Reply to the Commissioner's Memorandum (Doc. No. 12), filed May 15, 2023. Claimant, through counsel, seeks judicial review of an unfavorable administrative decision on his application for Disability Insurance Benefits.

The motion is fully briefed and ripe for review. Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, Claimant's Motion for Summary Judgment is DENIED; and the Commissioner's decision is AFFIRMED.

## I. BACKGROUND

On September 28, 2020, Claimant filed a Title II application for a period of disability and disability insurance benefits. (Tr. 25). The application alleged disability beginning September 12, 2020. (Id.). After his application was denied initially and upon reconsideration, Claimant requested a hearing by an Administrative Law Judge ("ALJ"). The ALJ held a virtual hearing with

Claimant's consent and waiver of right to an in-person hearing on December 1, 2021, after which the ALJ issued an unfavorable decision on January 20, 2022, finding Claimant is not disabled under the Social Security Act. (Tr. 22-43).

During the five-step sequential evaluation process for determining whether an individual is disabled under the Social Security Act, the ALJ found at step one Claimant had not engaged in substantial gainful activity since September 12, 2020. (Tr. 27). At step two, the ALJ found Claimant to have the following severe impairments: "coronary artery disease, diabetes mellitus, osteoarthritis, and neuropathy." (Tr. 28). Assessing step three, the ALJ found Claimant had "mild limitations" in "concentrating, persisting, or maintaining pace" and "adapting or managing oneself." (Tr. 28-29). The ALJ determined that none of Claimant's impairments, nor any combination thereof, met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 30). Before proceeding to step four, the ALJ found Claimant

> ha[d] the residual functional capacity to perform "light" work as defined in 20 CFR 404.1567(b) except he: should never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; can occasionally balance, stoop, kneel, crouch, and crawl; can perform frequent not constant overhead reaching with his bilateral upper extremities; can tolerate frequent not constant exposure to extreme cold, heat, wetness, humidity, and pulmonary irritants, such as dust, fumes, odors, and gases; and can tolerate frequent not constant exposure to workplace hazards such as unprotected heights and dangerous machinery.

(Tr. 30-31).

The vocational expert ("VE") testified that Claimant could perform his past relevant work as an automotive manager and parts manager when analyzing the physical and mental demands of both jobs and comparing them to Claimant's RFC. (Tr. 39-40). As a result, the ALJ concluded Claimant was not disabled, as defined under the Social Security Act, from September 12, 2020 through the date of the ALJ's decision. (Tr. 40). Claimant's subsequent request for review by the Appeals Council was denied, and as a result, the ALJ's decision became the final decision of the

Commissioner. (Tr. 1–6). Claimant has exhausted all administrative remedies and now appeals to this Court pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richard v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The district court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). The court must uphold the decision of the Commissioner, even in instances where the reviewing court would have come to a different conclusion, so long as the Commissioner's decision is supported by substantial evidence. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (alteration and internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). The Court does not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," we defer to the ALJ's decision. Johnson, 434 F.3d at 653.

3

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212 (4th Cir. 2017) (per curiam) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step process. 20 C.F.R. § 404.1520. Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.2d 176, 179–80 (4th Cir. 2016).

"If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four, which is 'the most [the claimant] can still do despite [her physical and mental] limitations [that affect h[er] ability to work].'" Lewis, 858 F.3d at 861–62 (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)). In Lewis, the Fourth Circuit explained the considerations applied before moving to step four:

> [The RFC] determination requires the ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Mascio, 780 F.3d at 636 (internal quotation marks omitted); see also SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Once the function-by-function analysis is complete an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. See generally 20 C.F.R. §§ 404.1566, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).

4

When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1).

Lewis, 858 F.3d at 862.

Proceeding to step four, the burden remains with the claimant to show he or she is unable to perform past work. Mascio, 780 F.3d at 635. If the claimant meets their burden as to past work, the ALJ proceeds to step five.

"At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [Mascio, 780 F.3d at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429)]. "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations."

Monroe, 826 F.3d 176, 180 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429).

If the Commissioner meets this burden in step five, the claimant is deemed not disabled and the benefits application is denied. Id.

### III. ANALYSIS

Claimant identifies two assignments of error on appeal: (1) the ALJ erred in her assessment of the medical opinions of Dr. Thomas Fehring and Rebecca Reavis, Ph.D., and (2) the ALJ failed to articulate how she accounted for Claimant's mild limitations in the paragraph 'B' domains of mental functioning in the RFC or adequately explain why the limitations were not necessary.

5

However, for the reasons discussed below, the Court disagrees and finds both assignments of error without merit.

**A. ALJ' assessment of medical opinions.**

       *i. Dr. Fehring's Opinion*

Claimant first agues the ALJ failed to properly evaluate the treating physician's opinion of Dr. Thomas Fehring when assessing Claimant's RFC. The Court disagrees.

The Fourth Circuit has held a treating physician's opinion need not be afforded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Rather, "a treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." C.F.R. §§ 404.1527(d)(2) (2002); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d at 178 (citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996)). "Check-box forms or fill-in-the-blank forms are typically considered to be weak evidence." Pate v. Berryhill, No. 5:16-CV-00864-D, 2018 WL 577998 (E.D.N.C. Jan. 10, 2018), report and recommendation adopted, No. 5:16-CV-864-D, 2018 WL 576833 (E.D.N.C. Jan. 26, 2018)(citation omitted). However, they may import greater significance when their content is supported by medical records. Id. When evaluating a claimant's symptoms, the ALJ must use the two-step framework found in 20 C.F.R. § 404.1529 and SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms. 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3.

Second, after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *4.

Claimant contends the record supports that Claimant would be limited to four hours or less of standing and/or walking, but that light work "requires a good deal of walking or standing". (Doc. No. 8 at 13). Specifically, Claimant cites the "Attending Physician's Statement" completed by Dr. Fehring diagnosing Claimant with a painful total knee replacement ("TKA") and moderate swelling, limiting Claimant to four hours or less of standing, and causing Claimant difficulty stooping, crawling, climbing, bending, squatting, kneeling, and walking. (Tr. 926). Claimant also cites his subjective statements of pain in support of the limitations opined by Dr. Fehring.

The ALJ found Dr. Fehring's opinion to be of little persuasive value because the opinion was inconsistent with Dr. Fehring's own treatment notes from the evaluation of Claimant the prior day. The ALJ cited Dr. Fehring's evaluation of Claimant on November 15, 2021, the day before the check-box form opinion was submitted on November 16, 2021. (Tr. 924-25). In the November 15th examination notes, Dr. Fehring indicates Claimant demonstrated "5/5 strength"; "no acute distress"; "normal mobility"; and "relatively unremarkable" bone scans. (Id.). The only abnormality noted during this examination was a normal gait and alignment but also a "somewhat antalgic gait". (Id.). Thus, Dr. Fehring's opinion on November 16 that Claimant had limitations due to moderate swelling from a painful TKA is inconsistent with the generally unremarkable examination the prior day.

The ALJ also found Dr. Fehring's opinion to be insufficiently vague because it was in the form of a check-box form provided by Claimant's representative. (Tr.36). The ALJ noted that

while Dr. Fehring opined that Claimant would be limited to four hours or less of walking or standing, the physician failed to quantify how often Claimant could perform postural activities or lift and carry. (Id.). Further, the ALJ found that Dr. Fehring did not provide explanations or objective findings to support the opinion. (Id.).

Finally, Claimant relies on the Fourth Circuit's decision in Arakas to assert that Claimant's subjective complaints should have been given weight when determining the limiting effect of the painful TKA diagnosed by Dr. Fehring. However, the Arakas decision requires "objective medical evidence of some condition that could produce the pain." Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 95 (4th Cir. 2020). The ALJ found Dr. Fehring's diagnosis of a painful TKA vague and inconsistent with his own treatment notes. Thus, the first step in the two-step process requiring "objective medical evidence present[ing] a 'medically determinable impairment' that could reasonably be expected to produce the claimant's alleged symptoms", 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3, was not met. Further, the claimant in Arakas suffered from fibromyalgia, a disease that the court stated "does not produce [objective] evidence." Arakas, 983 F.3d at 97. This Court is unwilling to extend the Fourth Circuit's finding of the subjective nature of fibromyalgia to this matter. Thus, the ALJ properly explained her reasoning for finding Dr. Fehring's opinion to be of little persuasive value when assessing Claimant's RFC because Dr. Fehring's opinion was vague and unsupported by his own treatment notes.

ii.    *Rebecca Reavis, Ph.D.'s Consultative Opinion*

Additionally, Claimant argues the ALJ failed to properly evaluate the entire consultative opinion of Rebecca Reavis, Ph.D., specifically failing to properly evaluate her finding that Claimant would be limited to simple, repetitive tasks and his fatigue could cause Claimant to be an unreliable worker, when assessing Claimant's RFC. Again, the Court disagrees.

8

It is the duty of the ALJ to weigh the evidence, not this Court; the role of the Court is limited to ensuring each of the ALJ's findings is supported by more than a scintilla of evidence. See Hays, 907 F.3d at 1456; Pearson, 810 F.3d at 207. Further, it is the ALJ's task to weigh the supportability and consistency of an opinion. See 20 C.F.R. §§ 404.1520c(c), 416.920c(c); 82 Fed. Reg. 5857.

Claimant argues the ALJ's ruling that Claimant is able to perform his past relevant work as an automotive manager and parts manager with Reasoning Levels of 5 and 4, respectively, is inconsistent with Dr. Reavis' opinion that Claimant has a mild impairment in sustaining attention to perform simple, repetitive tasks. Claimant also argues Dr. Reavis' opinion that Claimant's fatigue due to anxiety could cause him to be an unreliable worker is inconsistent with the ALJ's ruling that Claimant could work his previously held jobs, or any job at all.

The ALJ found Dr. Reavis' opinion to be generally persuasive; however, the ALJ found Dr. Reavis' assertion that Claimant would be limited to simple, repetitive tasks was not supported by Claimant's primarily unremarkable mental status examination. Claimant argues the ALJ failed to provide adequate reasoning to support this conclusion. The Court disagrees. The ALJ explained the Claimant's examination by Dr. Reavis found Claimant was able to recall five of five words with a delay to recall two of five. (Tr. 29). Claimant recalled eight digits forward and five digits backward and correctly performed three serial calculations. (Id.). Claimant's concentration was described as good. (Id.). Claimant held a job for twenty-one years and held his most recent job for three years. (Id.). Dr. Reavis also noted in her evaluation, "Although the [C]laimant had a flat affect, he was alert, oriented, pleasant, polite, and cooperative with spontaneous speech and logical thought processes. His concentration, social functioning, judgment, and insight were good with an estimated average intellectual functioning." (Tr. 33).

9

Further, the objective records demonstrate generally unremarkable mental findings. On March 1, 2021, Brian Vaughn, M.A., established care with Claimant for mental health treatment and noted Claimant engaged the assessment with an appropriate affect and thoughtfully responded to questions. (Tr. 852-53). On June 2, 2021, Claimant reported to Brian Vaughn that Claimant was unable to work due to his physical health, not mental health. (Tr. 864-65). On September 8, 2021, Claimant reported to Brian Vaughn that he attended church and performed work in his shop, which he felt happy about. (Tr. 872). Further, the State medical consultants Brian Fox, Psy.D., and Jacquelyn Harrison, Ph.D. noted at the reconsideration level that Claimant's mental status examinations returned generally normal results and medications helped with his symptoms. (Tr. 73-83). In the function report, Dr. Fox found Claimant had an appropriate affects and intact judgment and insight. (Id.). Dr. Fox and Dr. Harrison ultimately determined Claimant's depression and anxiety diagnoses were non-severe. (Id.). Thus, the ALJ adequately explained her evaluation of Dr. Reavis' medical opinion to be generally persuasive, except for the assertion Claimant would be limited to simple, repetitive tasks because Dr. Reavis' mental examination and the record shows Claimant had generally unremarkable mental health findings.

**B. ALJ's RFC Assessment**

Claimant next argues the ALJ failed to adequately account for Claimant's mild limitations in "concentrating, persisting, or maintaining pace" and "adapting or managing oneself" in the RFC assessment, or in the alternative, adequately explain why the mild limitations did not result in limitations in the RFC. Again, this Court disagrees.

According to the Fourth Circuit, there is no "categorical rule" that requires the ALJ to always include moderate limitations . . . in a Claimant's RFC. Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020); see also Mascio, 780 F.3d at 638. By contrast, the Fourth Circuit ruled "an

ALJ can explain why a claimant's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation" in the claimant's RFC." Shinaberry, 952 F.3d at 121; see also Mascio, 780 F.3d at 63

The ALJ adequately exp[...]mpairments could be reasonably expected t[...] concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the medical evidence and evidence in the record. (Tr. 32). The ALJ also explained that when symptoms are not substantiated by the medical evidence, other evidence in the record must be considered to determine if the Claimant's symptoms limit his ability to do work-related activities. (Id.). As described above, the ALJ concluded Claimant's mild limitations in concentration, persistence, or pace and adapting or managing oneself did not limit his ability to do work-related activities, and substantial evidence supports this decision. Thus, the ALJ was not obligated to include Claimant's mild limitations in consideration of RFC, and adequately explained why the additional limitations were unnecessary.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that for the reasons above, Claimant's Motion for Summary Judgment and Memorandum in Support (Doc. No. 8), is DENIED; and the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Signed: June 13, 2023

Frank D. Whitney
United States District Judge